16-2025-CA-003131-AXXX-MA Div: CV-G

Filing # 223813963 E-Filed 05/23/2025 01:38:38 PM

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT IN AND
FOR DUVAL COUNTY, FLORIDA

ACOSTA INC.,

    Plaintiff,                  CASE NO.:

v.

VNGR BEVERAGE, LLC d/b/a POPPI,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Acosta Inc. ("Acosta"), sues Defendant, VNGR Beverage, LLC d/b/a Poppi ("Poppi"), and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Acosta is a Delaware corporation with its principal place of business in Jacksonville, Florida.

2. Poppi is a Texas limited liability company.

3. Poppi is subject to the jurisdiction of this Court in accord with Section 48.193, Florida Statutes, and the Constitution because, among other things: Poppi agreed in a Master Agreement (defined below) between it and Acosta that the exclusive jurisdiction and venue for any dispute between the parties was in Jacksonville, Florida, and Florida law would control; Poppi breached the Master Agreement by failing to pay Acosta in Florida where payment was due; Poppi routinely works with Acosta in Florida; and Poppi engages in substantial and not isolated business activities in Florida to include selling its products in Florida.

4. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $50,000.00, exclusive of interest, costs, and attorneys' fees.

**EXHIBIT 1**
**PAGE 1 of 47**

5. Venue is proper in this Court because the Master Agreement provides for exclusive venue in Jacksonville, Florida, and the causes of action at issue accrued in Jacksonville, Florida.

## GENERAL ALLEGATIONS

6. Acosta provides various services to its manufacturer clients, to include marketing and sales support, to assist its clients in getting their products placed and sold in stores through various "business channels." For example, grocery stores, like Publix, are encompassed within the grocer business channel and certain larger retailers, like Walmart, are considered their own business channel.

7. Acosta's sales and marketing services include, *inter alia*, both headquarter sales at various retailers and in-store sales and marketing services that include activities at the store-specific retail level such as building displays and taking action to ensure shelf conditions comply with retailer planograms and client direction.

8. Poppi is a prebiotic soda brand.

9. On or about April 1, 2023, Acosta and Poppi entered into a Master Services Agreement (the "Master Agreement"), pursuant to which Acosta agreed to provide certain services to Poppi, to include, without limitation, serving as Poppi's exclusive sales representative to market Poppi's products in certain territories, with such services and territories to be defined in statements of work. A true and correct copy of the Master Agreement is attached as **Exhibit A**.

10. Since the inception of the parties' relationship, and as Acosta placed Poppi's products in new business channels, the parties would document their agreement for each new business channel in a statement of work or through an exchange of written communications establishing the terms of the placement and other business arrangements. Some of these statements

**EXHIBIT 1**
**PAGE 2 of 47**

of work were memorialized in formal written documents and others were documented in less formal exchanges between the parties.

11.    In exchange for Acosta's services, Poppi agreed to pay Acosta for its services as set forth in the Master Agreement, to include a monthly commission payment and performance bonus where applicable, as the Master Agreement defined those terms.

12.    At the time Acosta and Poppi entered into the Master Agreement, Poppi was a developing brand with limited retailer distribution and Acosta took a risk in taking on Poppi as a new brand. Additionally, Poppi repeatedly advised Acosta that Poppi's goal was to increase Poppi's value, largely through the efforts of Acosta's performance under the Master Agreement, and then sell the company to a third party.

13.    Accordingly, to incentivize Acosta to take on this new brand and help to grow Poppi to become a lucrative buyout target with national retail distribution, which Poppi repeatedly stated was its ultimate goal, Acosta and Poppi agreed to certain incentive compensation for Acosta if Poppi was successfully sold. More specifically, the Master Agreement provides that Acosta is entitled to a "Change of Control Payment" in the event of a transaction constituting a "Change of Control" of Poppi.

14.    Section 2.6 of the Master Agreement provides, in its entirety:

Change of Control. During the Term, the Client will provide written notice to Acosta upon completion of a transaction constituting a Change of Control of Client. The Client agrees to pay to Acosta, in addition to any other payments that are or may become due hereunder, a lump sum payment equal to one percent (1%) of the gross sales price, without deduction or offset (the "Change of Control Payment"). The Client agrees to deliver to Acosta the Change of Control Payment within thirty (30) days of the closing of the Change of Control. For purposes hereof, "Change of Control" means (a) the sale of all or substantially all of the assets of the Client, or (b) any merger, consolidation or acquisition of the Client with, by or into another corporation, entity or person or (c) any acquisition by one entity or person of 51% or greater of the membership interests or shares, as applicable, of the Client in one or more transactions.

**EXHIBIT 1**
**PAGE 3 of 47**

15. Acosta succeeded in its sales and marketing efforts as Poppi quickly developed into a national brand with nationwide placement in countless retailers and exponential sales growth. Indeed, Acosta's efforts resulted in Poppi's sales increasing by over 500%.

16. However, beginning in late 2024, without explanation of any kind, and despite Poppi continuously praising Acosta's performance and services, Poppi began sending Acosta correspondence purporting to terminate the Master Agreement and the parties' statements of work relating to various business channels, including the military channel, Costco channel, and grocery channel.

17. Acosta has since learned that Poppi's "termination" communications were sent to Acosta for no other reason than to attempt to evade the Change of Control Payment that Poppi willingly and specifically agreed to pay to Acosta at the inception of the parties' relationship.

18. Despite the purported terminations, Poppi continued to request and Acosta continued to perform services on Poppi's behalf in these same channels. Indeed, to date, Acosta continues to provide services on Poppi's behalf in the military channel, as well as mandate services in the grocery channel.

19. On March 17, 2025, PepsiCo ("Pepsi") released a press release stating that Pepsi "has entered into a definitive agreement to acquire Poppi, a fast-growing prebiotic soda brand, for $1.95 billion" (the "Press Release"). A true and correct copy of the Press Release is attached as **Exhibit B**.

20. After Pepsi issued the Press Release, Pepsi provided authorization to Acosta for Acosta to continue performing work on Poppi's behalf in the military channel referenced above.

**EXHIBIT 1**
**PAGE 4 of 47**

21.    Pepsi's acquisition of Poppi was "completed" within the meaning of the Master Agreement no later than March 17, 2025, and constitutes a Change of Control within the meaning of section 2.6 of the Master Agreement. Pepsi's acquisition of Poppi therefore triggered Poppi's obligation to pay Acosta the one percent (1%) Change of Control Payment (to be paid within thirty (30) days of the transaction closing).

22.    After Pepsi issued the Press Release, it became apparent to Acosta that Poppi was attempting to terminate the Master Agreement and the parties' various statements of work, while simultaneously requesting and accepting the benefit of Acosta's services, for no other reason than attempting to avoid paying Acosta the promised Change of Control Payment to which Acosta is entitled under the Master Agreement.

23.    Accordingly, on April 15, 2025, Acosta sent Poppi a letter (the "Request Letter") regarding, *inter alia*, Poppi's purported termination of the Master Agreement and the parties' statements of work—while Poppi continued to request and accept the benefit of Acosta's services—and requested that Poppi confirm that it will timely pay the Change of Control Payment to Acosta in accord with the Master Agreement based on Pepsi's acquisition of Poppi. A true and correct copy of the Request Letter is attached as **Exhibit C**.

24.    Acosta's Request Letter also requested that Poppi comply with its other contractual obligations under the Master Agreement. Specifically, Poppi had failed to timely pay Acosta for services, to include services in the military and Costco channels, and failed to provide Acosta with the necessary order data, as set forth in Section 2.3 of the Master Agreement, to enable Acosta to confirm amounts Poppi paid Acosta. Accordingly, Acosta's Request Letter also requested that Poppi immediately pay the past due sums, totaling approximately $350,000.00 as of the date of the Request Letter, as well as provide the required order data to Acosta.

EXHIBIT 1
PAGE 5 of 47

25.     On April 25, 2025, Poppi, through its outside counsel, sent a response to Acosta's Request Letter (the "Response Letter"). In the Response Letter, a true and correct copy of which is attached as **Exhibit D**, Poppi stated that "no Change of Control payment is due to Acosta."

26.     On May 19, 2025, Pepsi released another press release, a copy of which is attached as **Exhibit E**, announcing "that it has closed the acquisition of Poppi for $1.95 billion[.]"

27.     To date, Poppi has not paid Acosta the Change of Control Payment. Poppi made a partial payment of the past due sums owed to Acosta described above, but approximately $50,000.00 remains outstanding, and Poppi still has not provided Acosta with the necessary order data to confirm amounts paid and owed.

28.     All conditions precedent to the maintenance of the causes of action alleged herein have been complied with, have occurred in fact or by operation of law, or have been waived.

## COUNT I – BREACH OF CONTRACT

29.      Acosta realleges and incorporates by reference paragraphs 1 through 28 as if set forth fully herein.

30.     The Master Agreement is a valid and enforceable contract.

31.     Acosta has performed and continues to perform its obligations under the Master Agreement.

32.     Poppi has unequivocally stated that it will not perform its obligation under the Master Agreement to pay Acosta the Change of Control Payment to which Acosta is entitled within thirty (30) days of the closing of Pepsi's acquisition of Poppi. Poppi's absolute, unequivocal statement that it will not pay Acosta the Change of Control Payment amounts to an anticipatory breach of the Master Agreement by Poppi.

**EXHIBIT 1
PAGE 6 of 47**

33.     Poppi's anticipatory beach of the Master Agreement has caused and will cause Acosta to suffer damages.

34.     Poppi has also breached the Master Agreement by failing to pay Acosta sums due thereunder for services Acosta provided on Poppi's behalf, as well as failing to provide Acosta with the required order data to enable Acosta to confirm amounts paid and owed, which has caused Acosta to suffer damages.

35.     Acosta has retained the law firm of Smith, Gambrell & Russell, LLP to represent it in this matter and is obligated to pay its attorneys' fees incurred in connection herewith.

36.     Pursuant to section 2.2 of the Master Agreement, Acosta is entitled to recover its attorneys' fees from Poppi.

WHEREFORE, Acosta requests this Court enter judgment in favor of Acosta and against Poppi for damages, together with interest, attorneys' fees, and costs, and for such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

37.     Acosta realleges and incorporates by reference paragraphs 1 through 28 as if set forth fully herein.

38.     The Master Agreement is a valid and enforceable contract giving rise to an implied covenant of good faith and fair dealing.

39.     Prior to Acosta and Poppi entering into the Master Agreement, Poppi was a developing brand with limited market placement and Poppi repeatedly advised Acosta that Poppi's intention was to grow the company and then sell it. Accordingly, in the Master Agreement, Poppi specifically agreed that it would pay Acosta the Change of Control Payment in the event of a Change of Control transaction, which transaction was Poppi's ultimate goal.

7

**EXHIBIT 1**
**PAGE 7 of 47**

40.    After the parties entered into the Master Agreement, Acosta succeeded in its sales and marketing efforts resulting in exponential sales growth, which made Poppi an attractive buyout target. This was the exact scenario Poppi and Acosta contemplated when agreeing to the Change of Control Payment provision of the Master Agreement. Indeed, Acosta made extra efforts on behalf of Poppi to help it achieve its goals with the reasonable expectancy that it would be compensated for these efforts in accord with the Master Agreement.

41.    After Acosta wildly succeeded in its efforts, and Poppi knew that it was going to be acquired by Pepsi, Poppi began purported attempts to terminate the Master Agreement and the parties' statements of work solely in an effort to try to avoid the Change of Control Payment that it knew would come due upon completion of the sale to Pepsi. Despite these purported attempts at termination, Poppi continued to request, and Acosta continued to provide, services in the same business channels.

42.    In addition to Poppi's breaches of the express provisions of the Master Agreement, as set forth above, Poppi has also breached the implied covenant of good faith and fair dealing by purporting to terminate the Master Agreement while simultaneously requesting and accepting the benefit of Acosta's services solely in a deliberate attempt to avoid paying Acosta the approximately $19,000,000.00 Change of Control Payment to which Acosta is entitled under the Master Agreement.

43.    While the Master Agreement permits Poppi to terminate the Master Agreement in certain circumstances, the Master Agreement does not permit Poppi to terminate its agreements with Acosta solely to avoid making the Change of Control Payment, which was a cornerstone of the foundation of the parties' relationship at its inception. To the contrary, Poppi's actions in attempting to terminate the Master Agreement solely to avoid making the Change of Control

8

EXHIBIT 1
PAGE 8 of 47

Payment is a clear breach of Poppi's implied covenant of good faith and fair dealing. Moreover, such payment under the circumstances alleged herein was a fundamental inducement for Acosta to enter into the Master Agreement and Poppi's breach of the implied covenant of good faith and fair dealing has unfairly frustrated the purpose of the Master Agreement and disappointed Acosta's reasonable expectations thereunder.

44.     Poppi's breach of the implied covenant of good faith and fair dealing has deprived Acosta of the benefits of the Master Agreement and Acosta has suffered damages as a result.

45.     Acosta has retained the law firm of Smith, Gambrell & Russell, LLP to represent it in this matter and is obligated to pay its attorneys' fees incurred in connection herewith.

46.     Pursuant to section 2.2 of the Master Agreement, Acosta is entitled to recover its attorneys' fees from Poppi.

WHEREFORE, Acosta requests this Court enter judgment in favor of Acosta and against Poppi for damages, together with interest, attorneys' fees, and costs, and for such other and further relief as the Court deems just and proper.

EXHIBIT 1
PAGE 9 of 47

**SMITH, GAMBRELL & RUSSELL, LLP**

/s/ Nicole L. Kalkines
ALAN S. WACHS
Florida Bar No.: 980160
awachs@sgrlaw.com
tgreene@sgrlaw.com
dhsmith@sgrlaw.com
STEVEN E. BRUST
Florida Bar No. 0832091
sbrust@sgrlaw.com
asalane@sgrlaw.com
NICOLE L. KALKINES
Florida Bar No. 1003293
nkalkines@sgrlaw.com
bwheeler@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel.: (904) 598-6110
Fax: (904) 598-6210

*Attorneys for Plaintiff, Acosta Inc.*

10

**EXHIBIT 1**
**PAGE 10 of 47**