# EXHIBIT D

EXHIBIT 1
PAGE 32 of 47



Megan L. Donohue
T: +1 858 550 6085
mdonohue@cooley.com

**Confidential**
Via E-Mail to: awachs@sgrlaw.com

April 25, 2025

Alan S. Wachs
Counsel for Acosta Inc.
Smith, Gambrell Russell
50 N. Laura Street, Ste 2600
Jacksonville, FL 32202

Re:    **Acosta Inc. – Master Services Agreement**

Dear Mr. Wachs:

We write on behalf of our client, VNGR Beverage, LLC d/b/a Poppi ("Poppi"), in response to Mr. Caruso's April 15, 2025 letter ("Letter") on behalf of Acosta Inc. ("Acosta") regarding Poppi's February 20, 2025 termination of the Master Services Agreement ("MSA") with Acosta.[1]

The underlying facts are not in dispute.  Section 1.2 of the MSA allows either party to terminate the MSA upon 30 days' written notice if there is no outstanding Statement of Work ("SOW").  In compliance with this clause and the termination provisions of the outstanding SOWs, Poppi terminated the outstanding SOWs. First, Poppi provided notice of termination of the Statement of Work dated April 1, 2023 between Acosta and Poppi regarding the Natural and Grocery channels ("Natural and Grocery Channels SOW") on October 29, 2024, and Acosta confirmed the termination in writing on October 31, 2024.  As a result, on November 20, 2024 Poppi confirmed in writing that the Natural and Grocery Channels SOW would terminate on January 27, 2025.  On January 30, 2025, Acosta confirmed the termination of the Natural and Grocery Channels SOW.  Similarly, on November 4, 2024, Poppi terminated the OeP | Acosta Walmart 1P/3P Services dated August 15, 2024 between OeP, LLC and Poppi related to Walmart Online support ("Walmart SOW"), and on November 12, 2024 Acosta confirmed that the Walmart SOW would terminate as of November 30, 2024.  Subsequently, on February 7, 2025, Poppi gave Acosta 90 days written notice that the final outstanding SOW, the Statement of Work – Foodservice dated August 1, 2024 between Core Group, Inc., an affiliate of Acosta, and Poppi ("Foodservice SOW") would terminate on May 8, 2025, that Poppi was not aware of any other SOWs under the MSA and that to the extent any existed, they too would terminate on May 8, 2025.  Shortly thereafter, Poppi and Acosta mutually agreed to terminate the Foodservice SOW early, effective immediately as of February 19, 2025.  Given that all outstanding SOWs were properly terminated, Poppi provided 30 days' written notice to Acosta on February 20, 2025, that the MSA would terminate on March 23, 2025.

Acosta confirmed each of the above terminations of the SOWs and never objected to the March 23, 2025 termination of the MSA until April 15, 2025, at which point Acosta incorrectly asserted that "Acosta continues to perform services under the MSA at Poppi's request."  (Letter at 1.)   Notably, this assertion comes only weeks after PepsiCo's March 17, 2025 announcement that it intended to acquire Poppi.  Now, Acosta is wrongfully claiming that Poppi owes Acosta a Change of Control Payment.  (Letter at 2–3.)

---

[1] Poppi's response to the Letter is confidential and provided pursuant to the protections under California and federal law regarding settlement communications.  Nothing in this response constitutes an admission or waiver of Poppi's defenses, rights, or remedies.

**EXHIBIT 1**
**PAGE 33 of 47**



April 25, 2025                                                                                              **Confidential**
Page Two

Acosta's objection to Poppi's valid termination of the MSA and insistence that Poppi owes Acosta a Change of Control Payment is unfounded.

1. The MSA was properly terminated effective March 23, 2025.  Termination of the MSA under Section 1.2 simply requires (1) 30 days' written notice and (2) that there be no outstanding SOWs.  On February 20, 2025, after Poppi and Acosta ***mutually agreed*** to immediately terminate the remaining Foodservice SOW (i.e., the only remaining SOW under the MSA) early on February 19, 2025, Poppi provided proper notice of termination to Acosta.  Given the 30-day notice period, this meant the MSA terminated on March 23, 2025.  The terms of Section 1.2 do not provide an exception for a situation where Acosta vaguely claims that it is continuing to provide services outside of outstanding SOWs.  To the contrary, Section 1.3 requires Acosta to "immediately discontinue providing the Services" under the MSA in the event of an early termination, meaning Acosta cannot now claim that the MSA was not validly terminated, even if Acosta continued to perform services in contravention of Section 1.3.

2. Regardless, Acosta's claim that it continues to provide services for the military and Costco channels is simply incorrect and irrelevant.  Any work for military channels terminated as of December 15, 2024, as noted in Poppi's letter of November 20, 2024.  Similarly, the separate Representation Agreement regarding Costco services was terminated as of January 27, 2025, again as noted in Poppi's letter of November 20, 2024.  And Poppi has not received any outstanding invoices from Acosta for services rendered after these termination dates.  In any event, neither of those channels are governed by an operative SOW under Section 1.1 of the MSA; rather, there is no written agreement with Acosta regarding the military channel and the Costco channel is governed by a separate (and now terminated) representation agreement.

3. Acosta's reading of Section 2.6's Change of Control clause is incorrect.  Section 2.6 states that, "[d]uring the Term" of the MSA and "***upon the completion of a transaction*** constituting a Change of Control," Poppi must pay Acosta a Change of Control Payment "within thirty (30) days of the ***closing of the Change of Control***."  Thus, a Change of Control Payment is only payable if a change of control is completed and closed during the term of the MSA.  Because PepsiCo's acquisition of Poppi has yet to close (and may not close for several more months), no Change of Control Payment is owed to Acosta.

Given that the express terms of the MSA both (1) confirm the validity of Poppi's termination of the MSA and (2) bar Acosta's improper attempt to force Poppi to pay Acosta a "bonus" for an acquisition that has not even closed, no Change of Control Payment is due to Acosta.  Should you have any questions regarding the above, I am happy to discuss.

Sincerely,

Megan L. Donohue