**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**ACOSTA, INC.**,

       Plaintiff,                         Case No. 3:25-cv-00727

v.

**VNGR BEVERAGE, LLC d/b/a POPPI**,

       Defendant.

_____/

## DEFENDANT VNGR BEVERAGE, LLC D/B/A POPPI'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF ACOSTA INC.'S COMPLAINT

Defendant VNGR BEVERAGE, LLC d/b/a POPPI ("Poppi"), by and through its undersigned counsel hereby Answers and asserts its Affirmative Defenses to Plaintiff, Acosta Inc.'s ("Acosta") Complaint as follows:[1]

### PARTIES, JURISDICTION, AND VENUE

1. In response to paragraph 1, Poppi lacks the knowledge or information sufficient to form a belief about the truth of the allegations and on that basis denies them.

2. In response to paragraph 2, Poppi admits the allegations.

3. In response to paragraph 3, Poppi admits that it executed a Master Services Agreement (hereinafter "MSA") with Acosta, that some of its work with

---

[1] Poppi denies the allegations made in the Preamble of the Complaint and also denies the headings and subheadings that are not specifically numbered in the Complaint.

Acosta occurred in Florida, and that Poppi sells its products in Florida.  Poppi states that the MSA speaks for itself and is the best evidence as to its terms and contents.  Otherwise denied.

4.      In response to paragraph 4, Poppi admits that Acosta alleges an amount in controversy exceeding $50,000.00.  The remaining allegations consist of argument and legal conclusions to which no response is required; to the extent a response is required, Poppi denies the allegations therein.

5.      In response to paragraph 5, Poppi states that the MSA speaks for itself and is the best evidence as to its terms and contents.  The remaining allegations consist of argument and legal conclusions to which no response is required; to the extent a response is required, Poppi denies the allegations therein.

## GENERAL ALLEGATIONS

6.      In response to paragraph 6, Poppi admits that Acosta provides marketing and sales services.  Poppi lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis, denies them.

7.      In response to paragraph 7, Poppi admits that Acosta provides marketing and sales services.  Poppi lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis, denies them.

8.      In response to paragraph 8, Poppi admits that it is a beverage company.  Otherwise denied.

9.      In response to paragraph 9, Poppi admits that the parties entered into the MSA on or about April 1, 2023.  Poppi admits that a true and correct copy of the MSA is attached as Exhibit A to the Complaint.  The MSA speaks for itself and is the best evidence as to its terms and contents.  Otherwise denied.

10.      In response to paragraph 10, Poppi admits that, from the inception of the parties' relationship, Poppi and Acosta documented the terms governing Acosta's services through written agreements.  Poppi further admits that, following the execution of the MSA, the parties documented their agreements for services governed by the MSA through formal, executed statements of work ("SOWs").  Otherwise denied.

11.      In response to paragraph 11, Poppi admits that the parties' MSA includes compensation provisions, including provisions addressing monthly commission payments and performance bonuses, and states that the MSA speaks for itself and is the best evidence as to its terms and contents.  Otherwise denied.

12.      In response to paragraph 12, denied.

13.      In response to paragraph 13, Poppi admits that the MSA contains a provision titled "Change of Control."  The MSA speaks for itself and is the best evidence as to its terms and contents.  Otherwise denied.

14.      In response to paragraph 14, Poppi admits that the allegations quote Section 2.6 of the MSA.

15.      In response to paragraph 15, denied.

3

16.     In response to paragraph 16, Poppi admits that, beginning in 2024, it sent Acosta correspondence terminating the SOWs and the MSA.   The correspondence speaks for itself and is the best evidence as to its terms and contents.   Otherwise denied.

17.     In response to paragraph 17, denied.

18.     In response to paragraph 18, Poppi admits that Acosta submitted invoices for limited mandate services at Publix Super Markets Inc., which were performed under a separate Commitment letter executed between Poppi and Publix dated June 17, 2024.  Otherwise denied.

19.     In response to paragraph 19, Poppi admits that on March 17, 2025, PepsiCo ("Pepsi") issued a press release ("March Press Release"), a true and correct copy of which is attached as Exhibit B to the Complaint.  The March Press Release speaks for itself and is the best evidence of its contents.  Otherwise denied.

20.     In response to paragraph 20, Poppi lacks knowledge or information sufficient to form a belief about the truth of the allegations and therefore denies them.

21.     In response to paragraph 21, denied.

22.     In response to paragraph 22, Poppi admits it terminated the MSA and certain SOWs.  Otherwise denied.

23.     In response to paragraph 23, Poppi admits that a true and correct copy of Acosta's letter to Poppi dated April 15, 2025 ("Acosta's Letter") is attached as

Exhibit C to the Complaint.  Acosta's Letter speaks for itself and is the best evidence as to its contents.  Otherwise denied.

24.    In response to paragraph 24, Poppi states that Acosta's Letter speaks for itself and is the best evidence as to its contents.  Otherwise denied.

25.    In response to paragraph 25, Poppi admits that a true and correct copy of Poppi's April 25, 2025 letter to Acosta ("Poppi's Letter") is attached as Exhibit D to the Complaint.  Poppi's Letter speaks for itself and is the best evidence as to its contents.  Otherwise denied.

26.    In response to paragraph 26, Poppi admits that a copy of Pepsi's May 19, 2025 press release ("May Press Release") is attached as Exhibit E to the Complaint.  The May Press Release speaks for itself and is the best evidence as to its contents.  Otherwise denied.

27.    In response to paragraph 27, Poppi admits it has not made any payment to Acosta pursuant to the Change of Control provision in the MSA.  Poppi lacks sufficient knowledge or information to admit or deny the allegations regarding any purported past due sums owed to Acosta and on that basis, denies them.  Otherwise denied.

28.    In response to paragraph 28, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

## COUNT I – BREACH OF CONTRACT

29.    Poppi hereby incorporates by reference its responses to Paragraphs 1 through 28 as though fully set forth herein.

30.    In response to paragraph 30, Poppi states that the allegations consist of arguments or legal conclusions and that the MSA speaks for itself and is the best evidence as to its terms and content.  Thus, no response is required; to the extent a response is required, denied.

31.    In response to paragraph 31, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

32.    In response to paragraph 32, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

33.    In response to paragraph 33, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

34.    In response to paragraph 34, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

35.    In response to paragraph 35, Poppi admits that Acosta is purportedly represented by attorneys from the law firm Smith, Gambrell & Russell LLP in this

litigation.  Poppi otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations and therefore denies them.

36.    In response to paragraph 36, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.  Poppi also denies that Acosta is entitled of the relief requested in the "WHEREFORE" paragraph following paragraph 36.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

37.    Poppi hereby incorporates by reference its responses to Paragraphs 1 through 28 as though fully set forth herein.

38.    In response to paragraph 38, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

39.    In response to paragraph 39, Poppi admits that the MSA contains a provision titled "Change of Control" and states that the MSA speaks for itself and is the best evidence as to its terms and contents.  Otherwise denied.

40.    In response to paragraph 40, Poppi states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Acosta contemplated an "attractive buyout" or made "extra efforts" on Poppi's behalf in expectation of additional compensation and on that basis denies them.  Otherwise denied.

41. In response to paragraph 41, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

42. In response to paragraph 42, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

43. In response to paragraph 43, Poppi states that the allegations consistent of arguments or legal conclusions and that the MSA speaks for itself and is the best evidence as to its terms and contents. and that the MSA speaks for itself and is the best evidence as to its terms and content. Thus, no response is required; to the extent a response is required, denied.

44. In response to paragraph 44, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a response is required, denied.

45. In response to paragraph 45, Poppi admits that Acosta is purportedly represented by attorneys from the law firm Smith, Gambrell & Russell, LLP in this litigation. Poppi otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 of the Complaint and therefore denies them.

46. In response to paragraph 46, Poppi states that the allegations consist of arguments or legal conclusions to which no response is required; to the extent a

8

response is required, denied.  Poppi also denies that Acosta is entitled of the relief requested in the "WHEREFORE" paragraph following paragraph 46.

## AFFIRMATIVE DEFENSES

Without admitting liability and expressly reserving all rights, Poppi asserts the following affirmative defenses to Acosta's Complaint:

## FIRST AFFIRMATIVE DEFENSE: WAIVER

Acosta's claims are barred, in whole or in part, because Acosta waived and/or voluntarily relinquished its known right to enforce the MSA.  By no later than February 20, 2025, Acosta received written notice from Poppi terminating each SOW and stating that the MSA would terminate pursuant to Section 1.2 of the contract, effective March 23, 2025.  After receiving this notice, Acosta acted affirmatively with full knowledge that the MSA and all SOWs were terminating, including by winding down its representation of Poppi.  Acosta did not contend that any SOW remained active, nor did it assert that it continued providing services under the terms of the MSA that would prevent the termination from taking effect on March 23, 2025, or otherwise render Poppi's termination ineffective.  Poppi reasonably relied on Acosta's acquiescence, silence, and conduct following the notice of termination as confirmation that the MSA was no longer in effect.  As a result of this reliance, and Acosta's acceptance of the termination without objection, Acosta waived the right to dispute the effectiveness of Poppi's termination or assert claims arising under the MSA after the termination date.

9

## SECOND AFFIRMATIVE DEFENSE: RATIFICATION AND/OR ACQUIESCENCE

Acosta's claims are barred, in whole or in part, because Acosta waived, ratified, and/or acquiesced to Poppi's termination of the MSA in March 2025. By no later than February 20, 2025, Acosta received written notice from Poppi terminating each SOW and stating that the MSA would terminate pursuant to Section 1.2 of the contract, effective March 23, 2025. After receiving this notice, Acosta acted affirmatively with full knowledge that the MSA and all SOWs were terminating, including by winding down its representation of Poppi. Acosta did not contend that any SOW remained active, nor did it assert that it continued providing services under the terms of the MSA that would prevent the termination from taking effect on March 23, 2025, or otherwise render Poppi's termination ineffective. Poppi reasonably relied on Acosta's acquiescence, silence, and conduct following the notice of termination as confirmation that the MSA was no longer in effect. As a result of this reliance, and Acosta's acceptance of the termination without objection, Acosta has ratified and/or is estopped from disputing the effectiveness of Poppi's termination or asserting claims arising under the MSA after the termination date.

## THIRD AFFIRMATIVE DEFENSE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Acosta's claims are barred, in whole or in part, because Acosta materially breached the implied covenant of good faith and fair dealing under the MSA before any alleged breach by Poppi. The MSA expressly provides that either party may

terminate the agreement at will "with thirty (30) days' prior written notice to the other Party if there is not a SOW outstanding." On February 20, 2025, Poppi provided Acosta with written notice pursuant to Section 1.2, advising that no SOWs remained outstanding and that the MSA would terminate effective March 23, 2025. Acosta did not object, dispute, or raise any concern regarding Poppi's termination notice at any time before the March 23, 2025 effective date.

By remaining silent and failing to object during the notice period—despite later asserting that SOWs remained in effect and that Poppi lacked the right to terminate—Acosta acted inconsistently with the reasonable expectations of the parties and deprived Poppi of its contractual right to receive timely and good-faith notice of any dispute. The implied covenant required Acosta to act honestly and not to withhold information or objections in a manner calculated to disadvantage Poppi's exercise of its termination rights.

Acosta now alleges that it continued to provide services pursuant to the MSA after Poppi issued its termination notice. Acosta's silence during the notice period—while later asserting that Poppi's termination was improper—constituted bad faith gamesmanship designed to manufacture a dispute. Acosta's failure to timely communicate its position prevented Poppi from taking alternative steps, mitigating expenses, or clarifying any purportedly outstanding obligations during the contractual notice window. Accordingly, Acosta's own breach of the implied covenant of good faith and fair dealing bars, reduces, or otherwise precludes the relief it seeks in this action.

11

## FOURTH AFFIRMATIVE DEFENSE: ESTOPPEL

Acosta's claims are barred, in whole or in part, by the doctrine of equitable or promissory estoppel.  In early 2025, Acosta confirmed that all SOWs were terminated and agreed to Poppi's termination of the MSA, effective March 23, 2025.  Poppi reasonably relied on Acosta's representations and conduct as confirmation that the MSA was no longer in effect.  Acosta's later position that it continued to service Poppi pursuant to the MSA is directly contrary to its earlier representations and to Poppi's reliance thereon.  Moreover, to the extent any post-termination services, as alleged in the Complaint, were undertaken, they were performed voluntarily by Acosta under separate agreements outside of the MSA, with full knowledge that the MSA had terminated.  Acosta is therefore estopped from asserting claims based on the continued enforceability of the MSA.

## FIFTH AFFIRMATIVE DEFENSE: MUTUAL MISTAKE

To the extent the MSA survived Poppi's termination, which Poppi denies, Acosta's claims are barred, in whole or in part, by the equitable doctrine of mutual mistake, which renders a contract voidable when both parties, at the time of making a contract, were mistaken as to a basic assumption of the contract that has a material effect on the parties' performances under the contract.  At the time of contracting, both parties were mistaken as to the meaning and scope of Section 2.6 of the MSA, including whether the provision entitled Acosta to a percentage of any future sale or acquisition of Poppi and/or survived termination of the MSA, as well as the right to terminate the MSA at-will under Section 1.2 so long as no SOWs

remained outstanding.  Accordingly, the MSA is subject to reformation, rescission, or other equitable relief, and Acosta's claims premised on the mistaken terms are barred or limited.

### SIXTH AFFIRMATIVE DEFENSE: UNILATERAL MISTAKE

To the extent the MSA survived Poppi's termination, which Poppi denies, Acosta's claims are barred, in whole or in part, by the equitable doctrine of unilateral mistake.  A party may avoid a contract, or obtain reformation or other equitable relief, when at the time of contracting the party was mistaken as to a basic assumption of the agreement that materially affects the agreed exchange and is adverse to the mistaken party.  Here, Poppi was mistaken as to Section 2.6 of the MSA, which had a material effect on the parties' respective performances and obligations under the MSA.  At the time of contracting, the parties did not discuss that the provision would survive termination of the MSA or operate to entitle Acosta to a percentage of any company-level sale or acquisition.  Despite Acosta's current claim that the provision was central to the parties' negotiations, Poppi reasonably believed, based on the parties' communications and course of dealings, that the provision did not entitle Acosta to a percentage of any future sale or acquisition of Poppi, particularly following termination of the MSA.  Poppi's mistake was material, concerned a basic assumption underlying the contract, and occurred under circumstances in which Acosta knew, should have known, or expressly caused Poppi's misunderstanding and mistake.  Accordingly, Acosta's claims premised on the mistaken terms are barred or limited.

13

**SEVENTH AFFIRMATIVE DEFENSE: ACCORD AND SATISFACTION**

Acosta's claims are barred, in whole or in part, by the doctrine of accord and satisfaction. After receiving notice of termination from Poppi in February 2025, Acosta did not object to the termination but rather took affirmative steps to end its representation under the contract. Acosta's silence and conduct during this period indicated acceptance of Poppi's termination and satisfaction of Poppi's obligations under the MSA. To the extent Acosta performed any services after the termination of the MSA took effect on March 23, 2025, such services were undertaken, if at all, pursuant to a separate understanding and arrangement between the parties outside of the MSA, and any such arrangement resolved, extinguished, or replaced any obligations arising under the superseded agreement, thereby barring Acosta's claims.

**EIGHTH AFFIRMATIVE DEFENSE: NOVATION**

Acosta's claims are barred, in whole or in part, by the doctrine of novation. To the extent Acosta performed services following Poppi's termination of the SOWs and the MSA, such services were subject to new, superseding service agreements that replaced and extinguished the prior SOWs. Acosta's performance of services were therefore pursuant to the new agreement, and any claims under the superseded SOWs are barred by novation.

**NINTH AFFIRMATIVE DEFENSE: STATUTE OF FRAUDS**

Acosta's claims are barred, in whole or in part, by Florida Statutes § 725.01 ("Statute of Frauds"). Acosta's breach of contract claim alleges it performed

14

services pursuant to "informal" agreements. Acosta does not allege that the services could be performed within a year. To the extent Acosta asserts such service agreements that were not written and/or signed, such claims are barred by the Statute of Frauds.

### TENTH AFFIRMATIVE DEFENSE: PRIOR MATERIAL BREACH

Acosta's claims are barred, in whole or in part, by Acosta's prior material breaches of the MSA, including but not limited to, Acosta's failure to comply with Section 1.3 of the MSA.

### ELEVENTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE DAMAGES

Acosta's claims are barred, in whole or in part, to the extent Acosta failed to mitigate its damages. To the extent Poppi is found to owe Plaintiff any amount, that amount must be offset by the amount Acosta has received in mitigation or would have received if Acosta had fully performed its obligation to mitigate damages.

### TWELFTH AFFIRMATIVE DEFENSE: UNCONSCIONABILITY

Acosta's claims are barred, in whole or in part, by the doctrine of unconscionability. Acosta asserts that it is entitled to 1% of Poppi's total acquisition price based on marketing and sales services it provided to only some— and not all—of Poppi's customers for a period of less than three years, services for which Acosta was already fully compensated through commissions. Interpreting the MSA to require Poppi to pay Acosta an additional multi-million-dollar windfall for routine, compensated services would render the agreement substantively

15

unconscionable and grossly disproportionate to the consideration provided. In addition, the MSA is procedurally unconscionable in light of Acosta's conduct during contract formation, including its failure to disclose or attempts to misrepresent or conceal material changes to the agreement during negotiations.

### THIRTEENTH AFFIRMATIVE DEFENSE: HINDRANCE OF PERFORMANCE

Acosta's claims are barred, in whole or in part, by the doctrine of hindrance of performance. Poppi's performance under the MSA was conditioned on Acosta's cooperation and on Acosta's timely and good-faith performance of its own contractual obligations. Acosta, however, hindered, impeded, and interfered with Poppi's ability to perform by, among other things, failing to communicate material information about alleged ongoing services, failing to object to Poppi's notice of termination prior to March 23, 2025, and otherwise acting in a manner inconsistent with the parties' agreed-upon processes. To the extent any alleged breach by Poppi resulted from or was caused by Acosta's own obstruction, non-performance, or failure to act in good faith, Acosta cannot recover for such self-created conditions. Any recovery is therefore barred or must be reduced accordingly.

### FOURTEENTH AFFIRMATIVE DEFENSE: LACHES AND UNCLEAN HANDS

Acosta's claims are barred, in whole or in part, by the equitable doctrines of laches and/or unclean hands. After receiving notice of termination from Poppi on February 20, 2025, Acosta accepted the notice and allowed Poppi to believe that

16

the contractual relationship under the MSA would end on March 23, 2025. Acosta's conduct deprived Poppi of any opportunity to cure, clarify, or otherwise address the alleged breach of the MSA and prevented Poppi from taking timely steps to mitigate or avoid the damages Acosta now seeks.

## RESERVATION OF RIGHTS

Poppi reserves the right to assert affirmatively any other matter that constitutes an avoidance or affirmative defense under the MSA or applicable law.

## POPPI'S CLAIM FOR ATTORNEYS' FEES

Poppi seeks reasonable attorneys' fees pursuant to Florida Statutes, Section 57.105(7) and the attorneys' fees provision of the MSA.

Respectfully submitted,

February 10, 2026                    Respectfully submitted,


By: /s/ *Michelle Doolin*
Michelle Doolin (pro hac vice)
Michelle.doolin@sidley.com
SIDLEY AUSTIN LLP
12230 El Camino Real, Suite 300
San Diego, CA 92130
Telephone:  (858) 398-0150
Facsimile:  (858) 398-0450

Ian M. Ross (Florida Bar No. 91214)
iross@sidley.com
SIDLEY AUSTIN LLP
830 Brickell Plaza
Miami, FL 33131
Telephone:  (305) 391-5100
Facsimile:  (305) 391-5101

17

Megan Donohue (pro hac vice)
mdonohue@cooley.com
Reem Gerais (pro hac vice)
rgerais@cooley.com
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000
Facsimile:   (858) 550-6420

*Counsel for Defendant, VNGR Beverage, LLC d/b/a Poppi*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February 2026, a true and correct copy of the foregoing has been electronically filed with the Clerk of the U.S. District Court, Middle District of Florida, via CM/ECF, and copies electronically delivered to all counsel of record.

/s/ Ian M. Ross
Ian M. Ross